Michael Tersigni v. Wyeth et al. Michael Tersigni v. Wyeth et al. May it please the Court, Lewis Bograd for the appellant Michael Tersigni. I'd like to devote my limited time this morning to the central issue in this appeal, whether Massachusetts law recognizes a cause of action for negligent marketing or design of a prescription. Could you make up your mind which claim you are asserting here? They mean different things, and you've used both phrases below, although more recently it seems to be negligent design. Can we settle on one? Your Honor, I'm happy to call it negligent design for purposes of this argument. I think they're species of the same claim, but I'm happy to stick with that phraseology. I'll obviously be happy to answer any questions the Court may have about the other issues, but I'd like to focus on this one. Since at least 1870, Massachusetts has recognized a cause of action against sellers of unreasonably dangerous drugs when the SJC decided the Norton v. Sewell case. Nevertheless, the District Court ruled that Massachusetts does not recognize a claim for negligent design because of the State's adoption of Comment K to Restatement 402A. That conclusion was incorrect for numerous reasons. First, Massachusetts has long recognized a claim for negligent design. It has consistently followed Restatement Sections 395 and 398, which articulate the cause of action for negligent design, and has consistently recognized such a claim. It has applied that claim not just to various consumer products, but to FDA-regulated medical devices in the Sewell case. How about drugs? There is no case, Your Honor, directly applying the principle to drugs that we are aware of, but neither is the one rejecting it. The Comment K has no application to negligent design, either legally or logically. It's found as a comment to Section 402A, which is the section of the Restatement that relates to strict liability or, in Massachusetts, a breach of implied warranty. It specifically says in Comment K, the seller of such products, unavoidably unsafe products, is not to be held to strict liability. And, indeed, Comment A to 402A says specifically that this section doesn't speak to whether a defendant can be held liable in negligence. Similarly, there is no equivalent to Comment K found in either Restatement 395 or Restatement 398, which, as I said, both have been frequently adopted by the Massachusetts courts. Can I ask a question? Certainly, Your Honor. It may well be the case that the Massachusetts courts have not firmly answered the question which Justice Souter put to you. But here's what I understand state law to require. In claims alleging negligence in the design of a product, the plaintiff must show an available design modification would reduce the risk without undue cost or interference with the performance of the product. And the jury must consider whether a safer alternative design was available. And your brother says, well, even if that state law were to apply here, you came up with no evidence and no argument. And so your claim would have failed anyway. Your Honor, I would disagree with that proposition for two reasons. Okay, but that is the argument. That is the argument. And I should note it's an argument that was not raised below. But leaving that aside, first, if you look to the third restatement of torts products liability, which Massachusetts courts have not specifically referenced Section 6 of the third restatement, but they have frequently invoked the provisions of the third restatement on products liability. The third restatement distinguishes negligent design of drugs from negligent design of other products. Section 2, which concerns other products, requires proof of a reasonable alternative design. Section 6C, or 6, which governs drugs and medical devices, expressly does not require proof of a reasonable alternative design, precisely for the reason that you can't simply redesign a drug. What it says instead substitutes a much stricter standard for liability, which is that you must show that the risk is so great that a reasonable health care provider would never prescribe the drug to any category of patients. And we are fully prepared to meet that stricter standard in this case. Indeed, the FDA has already concluded that there are no patients for whom Pondemon is an appropriate drug. Yeah, but at the time this drug was supplied, this was an approved drug, and the FDA had not made that ruling, which occurred much later, after there was a cumulative amount of evidence that the drug was approved. That is correct, Your Honor. So what about preemption? Nobody mentions it. Well, the answer on preemption, Your Honor, and I think, again, we are getting fairly far afield, because these issues have not been fully vetted below, but the answer on preemption, I would suggest, can be found in footnotes 3 and 4 to the Bartlett decision. This Court is very familiar with Bartlett, since it decided the case on its way to the Supreme Court. The Supreme Court in Bartlett essentially said, we're getting rid of the stop-selling rationale. You can't say it's not impossible, because they didn't have to sell the drug in the first place. But the Court included a very important caveat in footnotes 3 and 4. Footnote 3 says, leaving aside the rare case in which state or federal law actually requires a product to be pulled from the market. Our preemption cases presume that a manufacturer's ability to stop selling does not turn impossibility into possibility. And then footnote 4 says, the federal misbranding statute requires a manufacturer to pull even an FDA-approved product, drug from the market, when it is dangerous to health, even when used in accordance with its labeling. So at least, Your Honor, Bartlett has not answered the question about whether any claim for design defect applies, in the very narrow set of facts we're dealing with here. A drug that was so dangerous that it was pulled from the market, because there are no patients for whom it should be given its risks far outweigh its benefits. And to go back to the comment K question where I started, that also responds to the appellee's argument about why a different rule should apply in negligent design than in strict liability. Comment K is not a prohibition on all strict liability design defect claims against drugs. Virtually all the cases in most states say you have to look on a case-by-case basis and determine whether a particular drug is unavoidably unsafe or whether it's unreasonably dangerous. And only if its benefits outweigh its known risks can we say that it's unavoidably unsafe, and therefore there will be no design defect liability. By definition, if a drug's risks outweigh its benefits, it cannot be an unavoidably unsafe product, and the defendant may be held liable for injuries caused by that product in strict liability or in Massachusetts Breach of Implied Warranty, just as it may be held liable for negligent design. And in that regard, I would point out, I just referenced two cases in this circuit. The Brochu case in New Hampshire and the Castagnano case, I'm sure I'm mispronouncing that, in Rhode Island, are both cases in which states within this jurisdiction have expressly held that comment K, that they adopted comment K but says it only applies on a case-by-case basis, and the burden is on the defendant to show that the drug's benefits outweigh its risks in order to invoke the protections of that clause. I think it's somewhat ironic that defendants make this argument that comment K should apply to negligence, despite what I think the restatement clearly says, given that in the very case where the Massachusetts Supreme Court acknowledged comment K and indicated its acquiescence in that policy, the court said that the restatement cited comment K for the proposition that the restatement rejects strict liability in favor of negligence for drug-related injuries. And that's what we're talking about here, is negligence. Was it negligent for Wyeth to continue to sell this product long after it should have known, it knew or should have known that it was unreasonably dangerous and should have pulled it from the market? You are correct, Judge Stahl, that it had not been, the FDA hadn't ordered it off the market, but as I think the Supreme Court made very clear in Wyeth v. Levine, the burden, the responsibility for making a judgment about the safety of a drug is on the manufacturer and not on the FDA. But, you know, looking at this case, aren't you asking us to create a new cause of action in Massachusetts? No, I'm not, Your Honor. I know you say you're not, but you can't cite any case with a drug. I can't cite a case that involves a drug. Well, I've cited the cases with drugs from the 1870s, but in the modern era, I've cited at least four cases in which the Massachusetts Supreme Judicial Court has recognized a cause of action for negligent design, including one case involving an FDA-regulated medical device, silicon breast implants. But that's a, I think that's a course of a different shade. Maybe it is, maybe it isn't. I think if you look at the third restatement, Section 6, which I just referenced a minute ago, applies to drugs and medical devices. I mean, they treat them as the same because they're heavily regulated products. It's also important to remember the history here. Back in 1870 and going on, when we used to have a privity requirement so that you could only hold a manufacturer liable if you bought the product directly from them, one of the recognized exceptions in the law from the get-go, from 150 years ago, was products that were inherently dangerous. That was sort of the first breach in the privity wall. And the products that were considered inherently dangerous for 150 years were food, drugs, explosives, I think. So the exceptional principle would be to suggest that somehow drugs were entitled, or had more immunity from negligence liability than other products, when historically drugs have had more. And there's nothing in the case law, nothing that the defendants have cited, that says that Massachusetts doesn't abide by that normal understanding. Indeed, everything in the Massachusetts case law says that negligence liability continues to apply to drug products. Now, I would note, Your Honor, in that regard, that we did file a motion to certify the question to the Massachusetts Supreme Judicial Court. We think the law is clear. But you weren't quite sure. That's why you filed the motion. It's always, you're always between a rock and a hard place on that motion, right? I think the law is clear. I think, for instance, Massachusetts hasn't answered the question that Castagnano and Braschew answered about whether they would apply comment K to strict liability on a case-by-case basis or on an across-the-board case for all prescription drugs. It doesn't affect the outcome here because comment K doesn't apply to negligence. But clearly there are parameters that could be clarified by the court. As I said, I think we think it's Wyeth that is asking for a change in the clearly established law. But if this court has doubts, this court has a well-established tradition of certifying questions even when the motion for certification was not filed in the district court. I see that I'm down to a minute and a half. I'd like to reserve the remainder of my time. Yes, you may have. Thank you, Your Honor. Sorry, I should have said it at the beginning. Yes. Please, the court. Ted Meyer for Wyeth. Yes, Mr. Ciccini is asking the court to create a new cause of action here. Negligent design does exist in Massachusetts. It's absolutely clear that negligent design requires proof of a reasonable alternative design. That was set forth by the Supreme Judicial Court in Lothby City Tank 40 years ago. It was reiterated in the Evans v. Lorillard case three years ago. It's a black-leathered law that that's required. We did raise it below. We raised the fact that they hadn't come forward with an expert on design defect in our renewed motion for summary judgment. When that motion was argued to the court, we cited this very law as a reason why what they're talking about is not negligent design. They're talking about something new that's never been recognized by any Massachusetts court, which is that the manufacturer of a properly manufactured, FDA-approved prescription medicine who properly warns of the risks of the medicine communicates that warning to a physician who makes the decision to prescribe it in consultation with his patient, that nonetheless a civil jury can declare that act illegal. And that's something brand new under Massachusetts law, which has never been recognized. There are two state court decisions out there. One is the Georgia decision and Idaho, is it, that he relies on to say, look, this isn't so outlandish. Two state courts have recognized the possible existence of these claims, at least on a fact-by-fact analysis, and therefore you ought to give the SJC an opportunity to see whether it wants to adopt this claim. Let me ask about the issue of certification, because I think the court's analysis in East Hampton Savings sort of set forth the factors a court would consider in certification, and that includes is there controlling authority, would the certified question the outcome determinative, and then a host of factors that basically go with to the practical effect of certification. First of all, I would submit here we do have controlling authority, and it's consistent with what George Stern's rule. This is, plaintiffs have not made out a negligent design case here. They haven't proved the basic elements. They didn't come forward with evidence on summary judgment when they're required to do with the basic elements of that claim. To the extent they're trying to make new law, the only court that we could find that has faced this issue under Massachusetts law was Judge Gorton in the Sprague case in the District of Massachusetts, who was asked to adopt this kind of theory 22 years ago and basically said drugs are incapable of being redesigned. This is a warnings claim and threw that out. That's the only time we've seen in decades of litigating product liability drug cases in Massachusetts this has come up. But in terms of whether a certified question would be outcome determinative, the answer to that question is also no. Whether plaintiff's theory is negligent design or whether it's this new theory that no reasonable physician would have prescribed the drug at the time of the events in this case to any physician, they did not come forward on summary judgment with a qualified expert to testify to that. They have not made the record. So any certified question would have to take into account the procedural status of the case and the absence of expert testimony from a qualified physician on that point. In addition, as Judge Stahl pointed out, you run very close to preemption principles here. Bartlett said to stop selling, that's not an option here. If the drug is properly labeled and properly manufactured, the answer is not stop selling. The Sixth Circuit was the most recent court to weigh in on this in Yates versus Jansen McNeil, which came out just in December. And in the context of a branded medication, Bartlett was in the context of a generic, although for this purpose I don't see a difference. They came out the same way. So any effort to forge a new law in this area would have to, would abut against a very strong preemption jurisdiction going the other way. Finally, the circumstances of this case where plaintiff, why it moved for summary judgment, there was an argument, there was a renewed motion and a further argument. At no time during this process did Mr. Tersini make any indication to the court that this was an unsettled area of law that required consideration by the Supreme Judicial Court. Then the case goes to a jury and, of course, an adverse jury verdict for Mr. Tersini. This would be a very poor case, send a very poor message for certification here, because it would mean that you really can try your case and then get a second bite at the apple without ever giving the district court a chance to consider whether there's an unsettled issue of law that the Supreme Judicial Court should consider. Thank you. If you've said enough, we've heard enough. Thank you. You now have a minute and a half. Thank you, Your Honor. I will necessarily be brief. The two cases I believe you were referring to, Judge Lynch, were the Lance case in Pennsylvania and the Toner case in Idaho. Right. I should say those cases, while those may be the only state Supreme Court cases that apply negligent design to drugs, there are other cases, including the Brochu case and the Bartlett case that have applied strict liability design defect to drugs, even in jurisdictions that recognize comment K. So this is hardly exceptional law. I also think you have to remember the exceptional circumstances here. We're talking about a drug that has been deemed unsafe and or not effective and pulled off the market by the FDA. That is exactly the situation contemplated by the restatement third, Section 6C, and the Massachusetts courts have consistently followed the third restatement of torts regarding product liability. There's no reason to think they would not continue to do so here. I'd also like to respond to the point about not having sought certification below. The district court's ruling on summary judgment occurred on the eve of trial. It would have necessitated putting off a long-planned trial for several years to file a motion at that moment. I think it's important to understand, as I said, historically, drugs have been subject to great than other products. Wyeth's position in this case is that even if they sold a drug that they knew was going to kill everyone who took it, so long as they sold it with a warning that said this drug is lethal, they would be immune from liability. That can't be the law. It isn't the law. And Massachusetts, all the press in Massachusetts clearly suggests that Massachusetts would recognize the claim we've articulated here. Thank you, Your Honor. Thank you both.